UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MITCHELL D. MCCLENDON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-25 |
| | § | |
| NUECES COUNTY, TEXAS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court are motions to dismiss filed by Nueces County, Texas ("Nueces County") and P. Saenz ("Saenz").[1] Although the docket sheet indicates that one motion was filed on behalf of Nueces County and the other was filed on behalf of P. Saenz, the motions are nearly identical in substance. Therefore, the Court will primarily cite to Docket Number 19 when referring to the motions. After considering the motions, record, and relevant authorities, the Court **GRANTS** the motions. All of Mitchell D. McClendon's claims against the defendants are **DISMISSED**.

### I.   Background

Mitchell D. McClendon ("Plaintiff") originally filed this 42 U.S.C. § 1983 case on January 31, 2013, in the Corpus Christi Division.[2] On April 15, 2013, the defendants filed motions to dismiss.[3] On May 7, 2013, the Honorable Nelva Gonzalez Ramos granted Plaintiff leave to amend his complaint.[4]

---

[1] Dkt. Nos. 19 and 20.
[2] Dkt. No. 1.
[3] Dkt. Nos. 8 and 9.
[4] Dkt. Nos. 17 and 18.

According to the first amended complaint, on or about February 11, 2011, Plaintiff, a seventeen year old boy, was an inmate in the Nueces County Jail.[5] Plaintiff asserts he was escorted to the gym with other inmates by an officer, P. Saenz, who was also the supervisor of the inmates while they were in the gym.[6] Plaintiff claims that he was attacked by a twenty-six year old inmate in the gym.[7] Medical personnel were summoned and Plaintiff was later transported to Memorial Medical Hospital.[8] Plaintiff claims that he "sustained numerous injuries to his body, including, but not limited to, bruising and abrasions,[] and two black eyes."[9]

In the wake of the attack, Plaintiff sued Nueces County, Texas, and P. Saenz (collectively, "Defendants").[10] Plaintiff brought suit under 42 U.S.C. § 1983 and "alleges that Defendant [sic], jointly and/or severally deprived him of his Fourth Amendment and/or Eighth Amendment rights and those rights, privileges, and immunities secured by the Fourth, Fifth, Eighth and/or Fourteenth (both as to applicability to States and based on substantive due process) Amendments to the Constitution."[11]

On May 21, 2013, Defendants filed motions to dismiss Plaintiff's amended complaint.[12] On May 31, 2013, this case was reassigned to this Court.[13] Plaintiff filed a motion to extend his response deadline the day before his responses to the motions to dismiss were due.[14] After documenting a host of errors in the motion for extension of time, the Court granted Plaintiff a several day extension, but warned: "The Court notes that it has demonstrated an extreme amount of patience with Plaintiff in granting this relief despite the myriad errors in Plaintiff's motion. It

---

[5] Dkt. No. 18 at p. 2.
[6] Dkt. No. 18 at p. 2.
[7] Dkt. No. 18 at p. 2.
[8] Dkt. No. 18 at p. 2.
[9] Dkt. No. 18 at p. 3.
[10] Dkt. No. 18 at p. 1.
[11] Dkt. No. 18 at p. 4
[12] Dkt. Nos. 19 and 20.
[13] Dkt. No. 24.
[14] Dkt. No. 25.

would be a mistake for the parties to expect such lenience from this Court in the future."[15] Inexplicably, Plaintiff failed to comply with the extended deadline and filed a response after the extended deadline had passed.[16] The Court struck Plaintiff's response as untimely.[17] Therefore, there is no response to the motions to dismiss before the Court.

## II.   Preliminary Matter

Before turning to the motions to dismiss, the Court takes this opportunity to point out the sloppiness of Plaintiff's amended complaint. For example, the amended complaint contains the following allegation:

> Furthermore, said excessive force committed against Plaintiff by said Defendants was not performed in good faith to maintain or restore discipline, but was performed maliciously, intentionally, and sadistically for the very purpose of punishing and causing harm to Plaintiff.[18]

This conclusory allegation of "excessive force" is wholly unsupported by the rest of the amended complaint. The combination of the sloppy amended complaint and the failure to timely respond to the motion to dismiss give cause for serious concern about the way Plaintiff's counsel, Christopher Gale, is conducting his legal practice. The Court urges Mr. Gale to take whatever steps necessary to ensure that he is giving each case the individualized attention it deserves and representing his clients in a zealous and competent matter.

## III.   Analysis

Defendants argue that Plaintiff has failed to state any claims upon which relief may be granted and move for dismissal of all Plaintiff's claims. "The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are

---

[15] Dkt. No. 26.
[16] Dkt. No. 28.
[17] Dkt. No. 29.
[18] Dkt. No. 18.

assumed true and are viewed in the light most favorable to the plaintiff."[19] "A pleading that states a claim for relief must contain: . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."[20] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[21] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22] "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[23]

### A. Fourth Amendment Claim

Plaintiff's complaint mentions the Fourth Amendment only in passing:

> As such, Plaintiff alleges that Defendant [sic], jointly and/or severally deprived him of his **Fourth** Amendment and/or Eighth Amendment rights and those rights, privileges, and immunities secured by the **Fourth**, Fifth, Eighth and/or Fourteenth (both as to applicability to States and based on substantive due process) Amendments to the Constitution.[24]

The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[25]

However, Plaintiff's complaint contains no allegations that Plaintiff's property or his person was unreasonably searched or seized. Without any factual basis, this claim is nothing

---

[19] Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter, 607 F.3d 1029, 1032 (5th Cir. 2010) (citation omitted).
[20] FED. R. CIV. P. 8(a).
[21] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
[22] *Id.* (citing *Twombly*, 550 U.S. at 556).
[23] *Id.* (citing *Twombly*, 550 U.S. at 555).
[24] Dkt. No. 18 at p. 4 (emphasis added).
[25] U.S. CONST. amend. IV.

more than a conclusory legal allegation. Because Plaintiff asserts no facts in support of his Fourth Amendment claims, the Court **DISMISSES** Plaintiff's Fourth Amendment claims with prejudice.

**B.     Remaining Claims**

The Court now turns to Plaintiff's Fifth, Eighth and Fourteenth Amendment claims. As a threshold issue, the Court notes that the amended complaint does not state whether Plaintiff was a pretrial detainee or a convicted prisoner, a status which determines the source of his rights:

> The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment, and, with a relatively limited reach, from substantive due process. The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment.[26]

However, a pretrial detainee's due process rights are "at least as great as the Eighth Amendment protections available to a convicted prisoner."[27] "[T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement[.]"[28]

Moreover, at the outset of a case involving a pretrial detainee,[29] the Court determines whether it is an episodic act or omission case or a conditions of confinement case.[30] Because this case arises from allegations of one inmate attacking another inmate on a single occasion, it

---

[26] Hare v. City of Corinth, Miss., 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (internal citations omitted). *See also* Edwards v. Loggins, 476 F. App'x 325, 326 (5th Cir. 2012) ("As a pretrial detainee, Edwards's constitutional rights were derived from the Fourteenth Amendment.").
[27] *Hare* at 639 (internal quotation marks and citations omitted).
[28] *Id.* at 650.
[29] *See* Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999).
[30] Flores v. Cnty. of Hardeman, Tex., 124 F.3d 736, 738 (5th Cir. 1997).

should be treated as an episodic act or omission case.[31] This conclusion relieves the Court of the need to determine Plaintiff's status, because though "[i]t is unclear in the record whether [Plaintiff] was a pretrial detainee or a convicted prisoner . . . as in this case, when a claim is based on the 'episodic acts or omissions' of jail officials, the standard of subjective deliberate indifference is applicable."[32] The Court will therefore continue to analyze Plaintiff's complaint, addressing the claims against the individual officer before those against the city.

1.   **Remaining Claims Against Officer P. Saenz**

Plaintiff accuses an officer, P. Saenz ("Saenz"), of violating his constitutional rights. The Fifth Circuit has addressed the responsibility of individual officers in the context of protecting prisoners:

> In particular, the Eighth Amendment imposes on prison officials a duty to protect prisoners from violence at the hands of other inmates. Prison officials are not, however, expected to prevent all inmate-on-inmate violence. Prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm.
> 
> A prison official is deliberately indifferent if he knows of an excessive risk to inmate health or safety and disregards that risk. The Court made clear that a prison official knows of an excessive risk only if (1) he is aware of facts from which he could infer that a substantial risk of serious harm exists and (2) he in fact draw[s] the inference. In other words, in order to be deliberately indifferent, a prison official must be *subjectively aware* of the risk.
> 
> In order to prove that an official is subjectively aware of a risk to inmate health or safety, a plaintiff inmate need not produce direct evidence of the official's knowledge. A plaintiff can rely on circumstantial evidence indicating that the official must have known about the risk. For example, the plaintiff can produce circumstantial evidence that the risk to inmate health or safety was so longstanding and pervasive that the official must have been aware of this danger.[33]

---

[31] *See* Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999) ("The former category would include such claims as where a detainee complains of the number of bunks in a cell or his television or mail privileges. The latter category, on the other hand, occurs where the complained-of harm is a particular act or omission of one or more officials." (internal quotations and citations omitted)).

[32] Keele v. Guajardo, 71 F. App'x 369, 370 (5th Cir. 2003).

[33] Adames v. Perez, 331 F.3d 508, 512 (5th Cir. 2003) (internal quotation marks and citation omitted).

Plaintiff's amended complaint includes many vague allegations against "Defendants." For example, Plaintiff alleges that "Defendants" established certain policies and procedures and inadequately trained deputies/officers. But Plaintiff does not allege that Saenz was a policy maker or responsible for training of Nueces County employees. On the contrary, it appears that Saenz was merely the officer present at the time of the incident. Therefore, to the extent they were meant to be directed at Saenz, the Court disregards those allegations against "Defendants" which relate to policy, customs, and training.

Turning to the factual allegations that are specifically directed at Saenz by name, they are very limited. Plaintiff alleges that Saenz was an officer for Nueces County, that he escorted the inmates to the gym, and that he was the supervisor of the inmates while they were in the gym.[34] Plaintiff also alleges that Saenz summoned the guards after the attack.[35] Furthermore, Plaintiff claims:

> While he was in the gym Plaintiff, a seventeen (17) year old boy was brutally attacked by inmate Edwards, a twenty-six (26) year old man with a history of violence and mental problems which if not known should have been known by the guards.[36]
>
> Plaintiff gained knowledge that this attack on his person was not so random and that his attacker had a (sic) extensive criminal past including drug offenses, assault, attempted murder, theft, and burglary. Defendants (including Defendant Saenz) knew of such history and/or concerns and yet, did nothing to prevent this person from access to others (including Plaintiff – a minor at the time) in order to cause harm. Defendants (including Defendant Saenz) knew that based on such criminal and psychological history, there was a strong likelihood that violence would result.[37]

Plaintiff further alleges that Saenz violated his constitutional rights:

> a) by acting with deliberate indifference to a substantial and known risk of harm to Plaintiff; b) by failing to intervene, where such intervention would have prevented the injuries to Plaintiff; c) By failing to protect Plaintiff, who was in a

---

[34] Dkt. No. 18 at pp. 1-2.
[35] Dkt. No. 18 at p. 2.
[36] Dkt. No. 18 at p. 2.
[37] Dkt. No. 18 at p. 3.

'special relationship' with Defendants based no [sic] Plaintiff's incarceration and his lack of liberty to protect himself from unwanted and foreseeable attacks; and d) in creating a danger, which otherwise would have not have existed, but for the conduct of Defendants, and which made more likely the opportunity of harm to occur to Plaintiff.[38]

Now, the Court must determine whether Plaintiff has sufficiently alleged that Saenz was deliberately indifferent to a substantial risk of harm to Plaintiff. As set forth above, to allege that Saenz was deliberately indifferent, Plaintiff must adequately allege that Saenz was aware of sufficient facts from which he could infer that there was a substantial risk of harm to Plaintiff and that Saenz actually drew that inference.[39] Here, Plaintiff alleges Saenz displayed deliberate indifference because he failed to segregate Plaintiff from the other inmates despite two factors: Plaintiff's status as a minor and first-time inmate at the time of the attack, and the attacker Edwards' mental and criminal history.

Beginning with Plaintiff's own status, the Court assumes that Plaintiff was seventeen and had never previously been incarcerated. He was likely more vulnerable than a hardened adult criminal. But although Plaintiff alleged that minors had been placed with adult inmates in the past, he failed to allege that that arrangement had resulted in those minors being attacked. For that matter, Plaintiff failed to allege that the Nueces County jail had previously had *any* problems with violence between inmates. In the absence of any allegation of a history of violence against minors or against inmates, the Court finds that Plaintiff has not alleged an excessive risk of which Saenz was aware and to which he was deliberately indifferent.

---

[38] Dkt. No. 18 at pp. 4-5.
[39] *See* Corley v. Prator, 290 F. App'x 749, 752-53 (5th Cir. 2008) ("Deliberate indifference is an extremely high standard to meet. An official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Additionally, Plaintiff alleged that Edwards, the attacker, had "a [sic] extensive criminal past" and "psychological history."[40] Yet, Plaintiff failed to flesh out these crucial allegations related to Edwards. Many psychological conditions do *not* increase the sufferer's propensity toward violence. And while Plaintiff alleged that Edwards had an "extensive criminal past including drug offenses, assault, attempted murder, theft, and burglary" and "a history of violence," these allegations do not support a claim that Saenz knew that Edwards was prone to attacking those around him, much less that Edwards had previously attacked Plaintiff or anyone else while in custody.

Ultimately, the Court finds that Plaintiff has failed to allege that Saenz was deliberately indifferent. Because "[Saenz] can be held liable for [his] failure to protect an inmate only when [he was] deliberately indifferent to a substantial risk of serious harm[,]"[41] the Court **DISMISSES** Plaintiff's remaining claims against Saenz.

## 2. Remaining Claims Against Nueces County

Before Plaintiff can establish a claim against Nueces County under an objective deliberate indifference standard, he first has to show the individual official culpable.[42] In *Flores v. County of Hardeman, Texas*,[43] the Fifth Circuit stated:

> To prove an underlying constitutional violation in an episodic act or omission case such as this one, a pretrial detainee must first establish that an official acted with subjective deliberate indifference. Only then may he hold a municipality accountable for that due process violation. Because we have held that plaintiffs' § 1983 claims against [the individual defendant] fail, those claims against Hardeman County necessarily fail as well.[44]

---

[40] Dkt. No. 18 at p. 3, ¶7.
[41] *Adames v. Perez* at 512.
[42] *See* Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997) ("In an 'episodic act or omission' case, an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission.").
[43] *Flores* at 736 (5th Cir. 1997).
[44] *Id*. at 739 (citing Scott v. Moore, 114 F.3d 51, 54 (5th Cir.1997)).

The dismissal of Plaintiff's claims against Saenz thus precludes his claims against the County. Nevertheless, the Court notes that Plaintiff's claim against the County would fail for reasons similar to the reasons his claim against Saenz failed. Plaintiff alludes to three theories under which the county may potentially be liable: (1) the official-policy-or-custom theory; (2) the failure-to-adopt-a-policy theory; and (3) the failure-to-train theory.[45] However Plaintiff's claim is characterized, it requires a finding of deliberate indifference.[46] Plaintiff's allegation that the County placed newly incarcerated minors with a general prison population, unsupported by any other factual allegation, does not show objective deliberate indifference. Crucially, Plaintiff failed to allege that Nueces County's acts or omissions had ever resulted in a similar attack, or that minors were placed with inmates who had exhibited violent behavior while in custody, or that the attacker Edwards had previously been violent while in custody. Plaintiff has failed to allege sufficient facts to infer that Nueces County had actual *or* constructive knowledge of a danger posed by its failure to segregate minors such as Plaintiff from the other inmates, and has thus failed to sufficiently allege that Nueces County was objectively deliberately indifferent. The Court **DISMISSES** Plaintiff's remaining claims against Nueces County.

IV.     Conclusion

Plaintiff believes that placing him in the same room with an inmate incarcerated for violent offenses and possibly mentally disturbed, in and of itself, violated his constitutional rights. As a matter of law, this allegation fails to state a claim. Nearly all inmates present some form of risk; that is why they are incarcerated. To show a constitutional violation, Plaintiff must allege some reason to think this inmate or prison setting involved a risk to his person high

---

[45] Dkt. No. 18 at pp. 5-6.
[46] Valle v. City of Houston, 613 F.3d 536, 542 (5th Cir. 2010) (finding deliberate difference required for liability under an official policy/custom theory); Rhyne v. Henderson County, 973 F.2d 386, 392 (5th Cir. 1992) (finding the same under a failure-to-adopt-a-policy theory); Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (finding the same under a failure-to-train theory).

enough that to ignore it would have required Saenz or Nueces County to display deliberate indifference. There can be many reasons to find such a risk, including but not limited to previous episodes with the prisoner or prison. But a simplistic appeal to "common sense" does not provide such a reason.

After considering the motions, record, and relevant authorities, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted as to either of the defendants. Therefore, the Court **GRANTS** Defendants' motions to dismiss. Plaintiff's motion for extension of time to file his joint pretrial order,[47] and Defendants' motion to dismiss for failure to timely file,[48] are **STRUCK** as moot. All of Plaintiff's claims are **DISMISSED**.

IT IS SO ORDERED.

DONE this 2nd day of January, 2014, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

---

[47] Dkt. No. 37.
[48] Dkt. No. 38.